AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

*FILED*

*U.S. DISTRICT COURT - N.D. OF N.Y.*

FEB 2 8 2019

AT _____ O'CLOCK
John M. Domurad, Clerk - Albany

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| **JASON PANTONE,** | ) Case No. 1:19-mj-98 (CFH) |
| | ) |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. In or about February 2019 in the county of Albany in the Northern District of New York, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1038(a) | In that the defendant sent letters/envelopes containing false information threatening injury or death by poisoning or exposure to a toxic substance to multiple to offices within the Northern District of New York, and elsewhere, and used the United States Postal System to send the letters/envelopes. |

This criminal complaint is based on these facts:
See attached affidavit.

☒   Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Johnathon Hoyt, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   February 28, 2019
_____

_____
*Judge's signature*

City and State:   Albany, New York

Hon. Christian F. Hummel, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL
COMPLAINT AND ARREST WARRANT**

Johnathon Hoyt, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and says:

## A. INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the FBI and an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Chapters 47 and 113B of Title 18 of the United States Code, including Section 1038 of that Title.

2.      I have been an FBI Special Agent for approximately one year and am currently assigned to the Albany Headquarters Office of the FBI's Albany Division, where I work on the Joint Terrorism Task Force (hereinafter "JTTF").   My experience as an FBI agent includes participating in national security investigations in the Northern District of New York concerning domestic and international terrorism.

3.      During my employment with the FBI, I have received training in both investigative procedures and evidence recovery.   As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.   In my work as an FBI Special Agent, particularly in domestic and international terrorism investigations and with the JTTF, I regularly work with and consult other Special Agents and law enforcement officers.   I have personally investigated several cases involving threatening letters, most of which threaten to contain a deadly substance (also known as a "White Powder Letter" or "WPL").   I have also assisted with other WPL investigations, and I regularly keep apprised of significant WPL investigations taking place

in the United States.

4.      Prior to my employment with the FBI, I was a federal law enforcement officer with the United States Border Patrol, as well as a local police officer with the Sierra Vista Police Department in Sierra Vista, Arizona.   In both places of employment, I received training in and investigated numerous federal and state crimes.   During my time as a police officer, I authored arrest warrant applications and obtained arrest warrants, and more than 50 search warrants for people, property, and vehicles.

5.    Along with other Special Agents from the FBI, members of the JTTF, a Postal Inspector of the United States Postal Inspection Service, and prosecutors with the United States Attorney's Office for the Northern District of New York (hereinafter "USAO-NDNY"), I have been assisting with an investigation of criminal activity involving a series of threatening letters sent through the United States Postal system.   The letters contained a writing threatening death to the addressee/victim/recipient by exposure to anthrax, and many contained a white powdery substance inside the letter that the sender identified, on an enclosed writing, as anthrax.   Testing of the white powder substance contained in the letters has just begun, however test results completed so far indicate that the white powder was not anthrax or a toxic agent.

6.      Mailing such letters intentionally conveying false or misleading information that a powder inside the envelope was the deadly toxin anthrax may constitute a violation of Title 18, United States Code, § 1038 (entitled "False information and hoaxes").

7.      The information in this affidavit is drawn from my participation in this investigation, and my observations and experience, and that of other Special Agents and law enforcement officers participating in this investigation, many of whom have experience in investigating domestic and international terrorism, weapons of mass destruction, and related offenses involving dangerous substances. The statements in this affidavit are based, in part, on information

2

personally known by me, as well as information provided by other law enforcement officers, directly and through their reports, records checks, conversations, interviews, and open source searches of the Internet. I have not included each and every fact known to me regarding this investigation in this affidavit. Rather, I have set forth only the facts I believe are necessary to establish probable cause to believe that the above-identified federal crime has been committed by JASON PANTONE.

## B.  SUMMARY OF THE INVESTIGATION

### Investigation Up Through February 26, 2019

8.      Beginning in February 2019, thirteen (13) threatening letters containing white powder, "White Powder Letters," or WPLs, were mailed from Hyde Park, New York to twelve (12) different victims. Each WPL threatened that the white powder inside the envelope was "ANTHRAX," indicated by a piece of paper with the typed word "ANTHRAX" on it. Some of the letters included a smiley face with "X" eyes, which I believe was intended to indicate death. One enclosed a typed letter bearing the words: "The substance contained in this letter is Anthrax. It's very dangerous and can result in death if inhaled or touched." Appearing immediately below the message was the same smiley face with "X" eyes, as previously described. Eight (8) letters were addressed to Social Security Administration Offices in the States of New York (Plattsburgh (2), Binghamton, Utica, West Nyack, White Plains) and Connecticut (Hartford, Torrington). The additional five (5) letters were addressed to United States District Court offices within the Northern District of New York (Syracuse, Binghamton, Albany, Plattsburgh, and Utica). As described above, similarities among these letters – including the labels on the exterior of the envelopes, the stamps and stamp placement on the envelopes, the powder enclosed, the Social Security and U.S. District Court addressees and addresses used, the enclosed writings, common postmark, and the

3

common geographic locations - indicate a strong likelihood that they were created by the same author.

9.     On February 24, 2019, the FBI received an anonymous tip indicating that JASON PANTONE sent fake/hoax anthrax letters to Social Security offices in upstate New York.   The text of the tip stated, "Jason Pantone has been mailing fake/hoax anthrax letters to the social security offices in upstate New York.   He leaves the letters in his mailbox to be picked up by the mailman. Why?   I think because he was very upset over his SSA disability denial. He was denied a while ago, but recently talks about it a lot.   He has been sending letters for about a week or so."   On February 25, 2019 the Federal Protective Service National Joint Terrorism Task Force Special Agent read the NTOC tip and forwarded it to the FPS Albany JTTF Special Agent for dissemination to the Albany JTTF investigative squad.   Agents conducted a follow up investigation to locate PANTONE.

10.     On February 26, 2019, a USPIS Postal Inspector ("PI"), acting in an undercover capacity as a United States Letter Carrier, delivered mail to [REDACTED], Hyde Park, New York, an address believed to be PANTONE's.   As part of Postal Inspectors' official duties, they are authorized to collect and deliver U.S. Mail.   At approximately 9:30 a.m., the PI approached [REDACTED], Hyde Park, New York and noticed the red flag on the mailbox was standing up.   A red flag that is standing up on the mailbox indicates there is outgoing mail in the mailbox for the Letter Carrier to take to the post office.   The PI delivered the mail destined for [REDACTED], Hyde Park, New York, and retrieved the mail which had been left in the mailbox to be mailed.

12.     Upon returning to the Hyde Park Post Office, the PI and another Postal Inspector reviewed the outgoing mail retrieved from [REDACTED], Hyde Park, New York.   There were four (4) outgoing letters retrieved from [REDACTED], Hyde Park, New York, and two

were similar to the previous WPLs.   The two (2) letters in question were both addressed to, and destined for, Social Security Administration Offices - the first to the Social Security Administration in West Nyack, New York, and the other to the Social Security Administration in White Plains, New York.   In addition, both letters had the addressee information typed onto a piece of paper and then taped onto the outside of the envelope.   On the back of each envelope, there were two (2) small pieces of scotch tape, one on each side of the envelope.   These characteristics match the previous WPLs.   In addition, both WPLs held the same return address of "Jason Pantone, [REDACTED], Hyde Park, NY 12538".   All four (4) letters were seized.   The mail delivered by the PI to that address was addressed to JASON PANTONE and another person.

13.   Because PANTONE resided in Hyde Park, New York, an application for a search warrant to search the suspect's residence for evidence of the offense was presented to a United States Magistrate Judge in the Southern District of New York.   In the afternoon of February 27, 2019, United States Magistrate Judge Paul E. Davison, sitting in White Plains, New York, authorized a search of that residence and signed a search and seizure warrant.

Investigation on February 27, 2019

14.   In the morning of February 27, 2019, JASON PANTONE was observed by the FBI placing a letter in the mailbox outside his residence in Hyde Park, New York. Examination of that letter/envelope revealed that it was addressed to the Torrington, Connecticut Social Security Administration office and appeared to contain a powder substance.   The letter also bore a return address label with the name of JASON PANTONE and his address, [REDACTED], Hyde Park, New York.

15.   On February 27, 2019, JASON PANTONE and his mother were surveilled by the FBI as they left the residence at 21 Van Dam Road and traveled to the office of a doctor in

Lagrangeville, New York. While they were in that office, the New York State Police (NYSP) were contacted by PANTONE's doctor, who advised that PANTONE had confessed to her that he had mailed WPLs.

16.    PANTONE was then interviewed by the agents of the FBI, U.S. Postal Inspection Service, and Social Security Administration-Office of the Inspector General, and he provided the following information.   PANTONE admitted that for the past week and a half he had been mailing WPLs containing a small amount of a white powder substance, which was either standard baking flour or self-rising flour.   Within the letters, he enclosed a note he prepared stating the white powder substance found within the letter was anthrax and could cause death. PANTONE advised the substances recovered from within the envelopes was absolutely not anthrax.

17.    PANTONE stated he did not choose the victims for any specific reason. He stated he sent approximately nineteen (19) letters to various Social Security Administration Offices in the state of New York and Connecticut and five (5) U.S. District Court offices. PANTONE obtained the address information by simply searching Google.   PANTONE advised he had no ill intent or hard feelings against the victims to whom he sent the WPLs.

18.    PANTONE stated he began sending the letters when he started experiencing an increase in what he referred to as "mental breakdowns" after rapid weight loss due to a crash diet.   PANTONE stated he was experiencing an increase in anxiety due to being stuck in the house all day and was not thinking clearly.

19.    PANTONE began using Google and typing words "hoax," "anthrax," and "hoax charge," which is how he found the idea of sending the hoax WPLs.   PANTONE read stories of people doing this in the past including sending letters to Social Security Administration and U.S. District Court offices.   PANTONE explained each letter contained: (i) a small

6

amount of flour or self-rising flour; and (ii) a typed threat, which may have said "anthrax" or something along the lines of "This substance is anthrax and if inhaled or touched can result in death." Along with these typed notes, he would include some type of drawing, as he is self-employed as an artist. Some WPLs included a smiley face with "X eyes." When asked what the "X eyes" indicated, PANTONE advised that it is because anthrax is dangerous. Some WPLs included a stick figure drawing with the same smiley face as described above.

20. PANTONE was shown images of the fourteen (14) WPLs recovered by law enforcement to date, which included the letter obtained from his mailbox earlier that morning (February 27th). PANTONE identified and placed his signature on a photograph of the front of the each corresponding envelope and was able to identify the following information about the letters:

- The Stamps
    - o Either a 32 cent stamp was used which have not been sold since 1999, or
    - o A "love" stamp or "forever" stamp which he admitted to purchasing the previous week
- The Label
    - o The label was either typed or handwritten.
        - PANTONE admitted he typed the labels on his laptop in Microsoft Word, printed the label out, glued it on the envelope with a glue stick and then taped it with scotch tape
        - PANTONE stated it was his handwriting on all of the letters that were not typed
        - The final three (3) envelopes contained his name and Hyde Park address for the return address
- The Contents
    - o Flour or self-rising flour

7

      o   He recalled and stated he drew the drawings in the envelopes

      o   He recalled and stated he typed the writings in the envelopes

21.     PANTONE confirmed the identity of fourteen (14) WPLs he had mailed from his residential mailbox via U.S. mail.  PANTONE stated he had acted alone.  PANTONE advised he also sent additional WPLs, not yet recovered by law enforcement, to either Social Security Administration or the U.S. District Court offices in the following cities in the State of New York: Buffalo, Rochester, Corning, Geneva, and Batavia.

22.     PANTONE created all the WPLs in his room while purposely hiding it from his mother.  PANTONE brought the flour into his room and placed it in a bag so his mother would not know what he was doing.  PANTONE advised that the only fingerprints that would be found on any of the letters would belong to him.  In addition, to protect anyone else from taking blame to include his mother's companion, he took pictures on a digital camera which he had in his bed room.  Agents also executed the aforementioned search warrant at PANTONE's residence on February 27, 2019, and seized this digital camera, flour, stamps, and envelopes, among other evidence.

23.     PANTONE put his return address on the last three (3) WPLs he mailed because he "just wanted this to end."  In addition to placing his return address on these WPLs, he PANTONE also placed three (3) anonymous tips through the FBI tip line regarding his WPL mailings.  PANTONE created the tip on a smart phone belonging to his mother which he had in his room and referred to himself in the third person.  For two (2) of the tips, PANTONE stated he turned the Wi-Fi off on the phone so it could not be traced.  However, he forgot to turn the Wi-Fi off for when he reported the third tip.

## C. **CONCLUSION**

24.     Based on the foregoing facts, I submit there is probable cause to believe that on multiple

occasions in February 2019, JASON PANTONE conveyed false information threatening injury or death by poisoning or exposure to a toxic substance, in that JASON PANTONE sent letters/envelopes containing these threats and a white powder substance, which he claimed was anthrax, to multiple to Social Security Administration offices and United States District Court offices within the Northern District of New York, and elsewhere, and JASON PANTONE used the United States Postal System to send the letters/envelopes containing these threats, in violation of Title 18, United States Code, Section 1038.

25.    WHEREFORE, I respectfully submit that the Court authorize a criminal complaint, and an accompanying arrest warrant, charging JASON PANTONE with violating Title 18, United States Code, Section 1038.

Johnathon Hoyt
Special Agent, FBI

Sworn to before me this
28th day of February, 2019.

Honorable Christian F. Hummel
United States Magistrate Judge
Northern District of New York