IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   8:19-CR-414 (MAD) |
| | ) | |
| **v.** | ) | Government's Sentencing Memorandum |
| | ) | |
| **JASON PANTONE** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum.

I.   **Introduction**

On October 6, 2020, the defendant pled guilty to Counts 1 thru 8 of an Information, Case No. 8:19-CR-414 (MAD) charging him with conveying a hoax letter involving anthrax. The defendant is scheduled to be sentenced on March 15, 2021.

The charge resulted when the defendant mailed multiple letters through the U.S. Postal Service which contained a quantity of white powder and a typed note bearing the word "ANTHRAX".[1]   Some of the letters included a smiley face, with "X" eyes, stickers, and other threatening language. The defendant addressed the letters to Social Security Offices and United States District Court locations in the Northern District of New York. The envelopes were not addressed to any particular person, only to the office location. As such, some letters containing the threats and white powder were opened by unsuspecting persons working in these locations.

---

[1] Anthrax is commonly and publicly known as a biological agent that causes death and illness, along with instances of public figures receiving 'white powder' letters and threats of anthrax in the mail, over the years.

The defendant's conduct caused some victims to seek medical care and locations to be closed or services to be interrupted.

## II. Applicable Statutory and Guidelines Provisions

### a. Statutory Maximum and Minimum Penalties

The defendant's conviction in violation of 18 U.S.C. § 1038, subjects the defendant to a maximum term of five years in prison for each count; a mandatory term of at least three years of supervised release; and up to a $250,000 fine.

### b. Guidelines Provisions

The government adopts, without qualification, the guidelines calculations set forth in the Presentence Report ("PSR") resulting in a combined offense level of 18.  PSR ¶ 138.

#### i. Basic Offense Level

Under the federal sentencing guidelines, the "base offense level" for the defendant's conviction for 18 U.S.C. § 1038 is 12, pursuant to U.S.S.G. §2A6.1(a). PSR ¶ 131. The government agrees with the basic offense level set forth in the PSR.

#### ii. Specific Offense Characteristics

##### 1. The offense involved more than two threats

The government agrees that the offense involved more than two threats and the offense level should be increased by two levels, pursuant to U.S.S.G. § 2A6.1(b)(2).  The government and the defendant stipulated to this increase in the plea agreement.  PSR ¶ 133.

##### 2. The offense caused substantial disruption to services and/or substantial expenditure by public services to remedy

The government agrees the defendant's conduct caused significant disruption to services and substantial expenditure by public services to remedy.  PSR ¶ 134.

The defendant's criminal actions resulted in numerous law enforcement agencies, fire departments, medical personnel and emergency response teams being dispatched to SSA and U.S. District Clerk Offices' across the Northern District of New York. Several offices that first received the letters alerted fire departments and hazardous material personnel, who in turn responded in their emergency vehicles to provide assistance. Offices evacuated civilians and employees into the street, emergency responders donned full biological attire to inspect and safely collect the white powder, and in at least one instance, responders cautiously shielded the office with plastic to forbid any additional spread of the agent.

Needless to say, several offices were evacuated and closed, or temporarily closed, and many incurred monetary damages after believing the white powder to be a biological agent. For instance, the Plattsburgh SSA office was closed for two days, while the Utica office was closed for one half day and the Binghamton office was closed for one half day. Clearly, the defendant's conduct caused significant disruption to the SSA's ability to provide services to persons with disabilities, interrupted the processing of claims, and prevented persons from visiting the office to discuss or remedy issues with their disability payments or claims. Further, the U.S. Districts Court Clerk's Office in Syracuse implemented hazardous material protocol and was closed for two hours, while the Binghamton Clerk's office implemented hazardous material protocol and closed for approximately three hours. For this period of time, the U.S. District Court Clerk Offices' were unavailable to access by the public, whether it be to follow up on criminal or civil cases, file emergency petitions, or conduct any other business.

The government agrees with the facts and figures provided in the PSR incurred by the various agencies and adopts and reiterates them here. All together, the white powder letters to the SSA and U.S. District Courts in the Northern District of New York caused these agencies to sustain a total loss of approximately $15,500. Aside from the costs of closing the offices, multiple emergency

resources, such as fire departments and hazardous material units were dispatched throughout NDNY, and elsewhere. The defendant's conduct resulted in unnecessary costs to emergency service budgets. As noted in the PSR, numerous government and local resources were expended to respond and investigate the white powder letters.

### iii. Criminal History Category

The government agrees with the Probation Department's finding that the defendant's criminal history category is I. PSR ¶ 147.

### iv. Guidelines Range and Sentence

As described above, it is the government's position that the combined offense level is 15 and the criminal history category is I. This is consistent with the calculations in the presentence report. PSR ¶ 176.

As a result of the above-described calculations, the federal sentencing guidelines sections advise that the defendant receive a sentence of 18-24 months of imprisonment; a fine of no more than $7,500 to $75,000; a $100 special assessment; and a supervised release term of one to three years. See § 5E1.2. PSR ¶¶142, 176, 181, 187

## III. Government's Sentencing Recommendation

The defendant mailed several envelopes to Social Security Offices and United States District Court Offices in the Northern, Southern and Western Districts of New York, and the District of Connecticut. While a typed note that simply stated "ANTHRAX" accompanied many of the letters, the defendant sought to magnify the threat with smiley faces and the letter X crossing out eyes, which apparently indicated death. In one letter, the defendant went one step further in a letter to a U.S. District Court Clerk's Office, where he stated "this letter contains a substance known as Anthrax. If it's touched or inhaled, it can result in death." An unsuspecting person

opened the letter, read the note, and observed the white powder in the envelope, and presumably had to wonder whether the anthrax was real, or was it a hoax.

Disturbingly, the defendant did not address any of the letters to any particular person. Rather, like the letter referenced above, the defendant intended for any unsuspecting individual to open the letter, read the note, see the powder, and be placed in fear of death. Put another way, the defendant meant for the recipient, who he had never met before to believe that death was about to befall them from Anthrax poisoning.

Based on all of the information before the Court, the government respectfully requests that the Court sentence the defendant to a term of imprisonment. The sentence that the government recommends here is sufficient, but not greater than necessary to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2).[2]

> Respectfully submitted this 11th
> day of March, 2021,
>
> ANTOINETTE T. BACON
> Acting United States Attorney
>
> By:   */s/ Troy Anderson*
>        Troy Anderson
>        Assistant United States Attorney
>        Bar Roll No. 700369

---

[2] The government reserves the right to respond to defense arguments raised for the first time after filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond. *See* Fed. R. Crim. P. 32(i)(1)(c), 32(h). Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

## CERTIFICATE OF SERVICE

I hereby certify on March 11, 2021, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for the defendant.

/S/ Troy Anderson